UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| JEFFREY W. FREEMAN, | ) | No. CV 06-2779 (CW) |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner, Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge. Plaintiff seeks review of the Commissioner's denial of disability benefits. As discussed below, the court finds that the Commissioner's decision should be reversed and this matter remanded for further proceedings.

**I. BACKGROUND**

Plaintiff Jeffrey Freeman was born on February 17, 1956, and was forty-nine years old at the time of his administrative hearing. [Administrative Record, "AR," 59, 284.] He has a high school education and past relevant work experience as a building maintenance

repairer and construction worker. [AR 18-19.]  Plaintiff alleges disability on the basis of lumbar discogenic disease. [AR 17.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on May 8, 2006, and filed on May 10, 2006.  On November 8, 2006, defendant filed an answer and plaintiff's Administrative Record ("AR").  On January 12, 2007, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on April 2, 2003, alleging disability since August 1, 2002. [JS 1.]  An administrative hearing was held on February 27, 2005, before Administrative Law Judge ("ALJ") Peggy Zirlin. [AR 284.]  Plaintiff appeared with counsel, and testimony was taken from plaintiff and vocational expert David Rinehart. [Id.]  The ALJ denied benefits in a decision filed on July 22, 2005. [AR 30.]  When the Appeals Council denied review on March 14, 2006, the ALJ's decision became the Commissioner's final decision. [AR 5.]

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject

the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

### V. DISCUSSION

#### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler,

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date (step one); that plaintiff had "severe" impairments, namely degenerative disc disease of the lumbar spine (step two); and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 29.] Plaintiff was found to have an RFC for sedentary work with five-minute stretch breaks at two-hour intervals, and with limited (or occasional) pushing/pulling with the lower extremities, among other limitations. [Id.] Based on this RFC, plaintiff was found unable to return to his past relevant work (step four). [Id.] The ALJ adopted the opinion of the vocational expert, who testified that a person with plaintiff's limitations could make a successful vocational adjustment to other jobs in the national economy, such as assembler, order clerk for food and beverages, and telephone quotation clerk (step five). [AR 29-30.] Accordingly, plaintiff was found not "disabled" as defined by the Social Security Act. [AR 30.]

**C. ISSUES IN DISPUTE**

The parties' Joint Stipulation identifies four disputed issues:

1. Whether proper weight was given to the opinions of the treating and examining physicians;

2. Whether the assessment of plaintiff's RFC was erroneous;

---

765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

3.   Whether the Step Five finding was supported by substantial evidence; and

4.   Whether plaintiff's credibility was properly evaluated. [JS 2.]

**D.   ISSUE ONE: THE MEDICAL EVIDENCE**

According to plaintiff's responses in a pain questionnaire, his lower back pain began in approximately 1997. [AR 87.] Plaintiff described the pain as recurrent and radiating down his legs to his feet. [Id.] Plaintiff began receiving treatment from Dr. Eric Mok at Kaiser Permanente in December 1997. [AR 158.] After reviewing plaintiff's medical history and conducting a physical examination, Dr. Mok diagnosed plaintiff with low back pain with radicular symptoms bilaterally and prescribed physical therapy. [AR 159.] Dr. Mok continued to treat plaintiff until 2003. [AR 116-21, 138-39.] During that period, plaintiff complained of worsening back pain. [AR 116-21.] Treatment included morphine, epidural injections, a TENS unit, and referral to a pain management clinic. [AR 117, 155, 293.]

Plaintiff's pain management program was administered at Kaiser Permanente by Dr. D. Wallenstein. [AR 215-17, 219-25, 228-29.] Plaintiff was started on chronic opioid analgesic therapy ("COAT") in August 2003. [AR 228.] One month later, in September 2003, Dr. Mok noted plaintiff's participation in Kaiser's pain management clinic, conducted a physical examination, and completed a short-term disability form finding plaintiff disabled for sixty days. [AR 226.] A few days later, Dr. Wallenstein noted that plaintiff's pain was adequately controlled with morphine with no side effects, but that he still had discomfort in his hips and legs. [AR 225.] In October 2003, Dr. Wallenstein noted that the pain was well controlled on morphine

"up to a point" but that plaintiff complained the doses did not last long enough. [AR 223.]  Plaintiff was then prescribed Methadone. [Id.] In November 2003, Dr. Wallenstein reported that plaintiff had missed sixteen of thirty-six doses of methadone. [AR 220.]  In January 2004, Dr. Wallenstein reported that plaintiff's pain was "adequately controlled" with methadone with no side effects. [AR 215.]

In June 2004, Dr. Mok completed a Lumbar Spine Residual Functional Capacity Questionnaire. [AR 250-54.]  Dr. Mok noted that plaintiff was taking methadone, neurontin and nortriptyline prescribed by his pain specialist. [AR 251.]  Dr. Mok opined that based on plaintiff's low back pain, his functional limitations would include sitting and standing for only fifteen minutes at a time for a total of two hours per eight-hour workday, changing positions at will, taking five minute breaks every two hours, and absences approximately four days per month. [AR 251-53.]  During the hearing, the vocational expert testified that such limitations would render plaintiff disabled. [AR 306.]

The ALJ rejected Dr. Mok's opinions as to plaintiff's functional limitations, citing multiple reasons.[2] [AR 22-24.]  It appears that

---

[2] In addition to the primary reason discussed below, the ALJ found Dr. Mok's opinion entitled to minimal weight because it was not supported by objective clinical findings or observed functional limitations; Dr. Mok was not an orthopedic specialist; the opinion was inconsistent with Dr. Mok's treatment notes; and the assessment relied solely on plaintiff's subjective complaints. [AR 22-24.]  According to the record, however, Dr. Mok relied on an MRI and discogram demonstrating degeneration at "multiple levels" of the lumbar spine, as well as his own clinical observations upon multiple personal examinations, rather than relying exclusively on plaintiff's subjective allegations. [AR 139, 230, 250.]  Moreover, Dr. Mok's lack of specialization in orthopedics does not make him less qualified to render an opinion as to plaintiff's functional limitations, in light of his lengthy treating relationship with plaintiff.  See Lester, 81 F.3d at 833 (finding that a treating physician with a "continuing

the most significant reason that the ALJ found Dr. Mok unpersuasive was that he did not "address how the claimant's pain has been affected by pain management." [AR 22.]  The ALJ elaborated that "the pain management doctors see the claimant more often than does Dr. Mok."[3] [AR 23.]  Moreover, Dr. Mok's restrictive evaluation, according to the ALJ, failed to take into account plaintiff's "successful pain management treatment," which resulted in "significant pain improvement" and "increased mobility." [AR 23.]  In light of the existing record, it is not clear that this was a legitimate basis to reject Dr. Mok's assessment.  See Lester, 81 F.3d at 830 ("Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing.")(citation omitted).

　　The record demonstrates that Dr. Mok, a Kaiser physician, was well aware that plaintiff was undergoing therapy at the pain management clinic and knew the type of medication he was receiving from other Kaiser physicians. [AR 226, 251.]  On the other hand, there

---

relationship with the claimant" but without a speciality in mental health was nonetheless "especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations...").  On the whole, it is not clear that the reasons provided were sufficiently specific and legitimate to discount Dr. Mok's opinion, and remand for further proceedings is necessary, as discussed below.

[3] Although the ALJ cited Dr. Mok's statement that he sees plaintiff only once per year as a reason to discount his opinion [AR 23], the record is not sufficiently clear to conclude this is a legitimate reason: from late 2002 to mid 2003, for example, Dr. Mok saw plaintiff at least six times [AR 116-21, 130, 138-39], but the visits apparently became less frequent in late 2003 and 2004. [AR 250-54.]

8

appears to be some disparity between Dr. Mok's restrictive RFC assessment and Dr. Wallenstein's observations that plaintiff's pain is adequately controlled with the proper medication.  The ALJ's posited explanation for the disparity, that Dr. Mok failed to consider the pain management records, is not reasonably supported by the record in light of the evidence as to Dr. Mok's central role in plaintiff's treatment:  Dr. Mok referred plaintiff to the pain management program, examined plaintiff during the pain management period for the purpose of a short-term disability statement, and re-assessed plaintiff's functional capacity months later.  Although it is possible that Dr. Mok failed to consider adequately the entire Kaiser record before making his assessment, it is at least equally likely that his opinion reflected that of all of the Kaiser doctors who treated plaintiff.  See Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1039 (9th Cir. 2003)(finding that a treating physician may transmit "both his own knowledge and opinion of [the claimant] and those of the medical treatment team under his supervision" and complete an RFC assessment "on behalf of his treatment team.").  Because the current record is ambiguous on this point, further development is necessary for clarification of the interaction of the Kaiser treatment team and then a resolution in the conflict of medical evidence, if any.  See 20 C.F.R. §§ 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved..."), 416.912(e)(1)(same); see also Benton, 331 F.3d at 1040 (remanding to develop record as to interrelationship among plaintiff's treatment team to determine whether to accord physician "treating source" status).

**E.   REMAINING ISSUES**

In light of the resolution of Issue One, Issues Two and Three need not be resolved at this time. As for Issue Four, the evaluation of plaintiff's subjective symptom testimony, a finding that the ALJ's credibility determination was erroneous would not necessarily direct a finding of disability based on the current record. See Varney v. Sec. of Health and Human Servs., 859 F.2d 1396, 1400 (9th Cir. 1988)(where ALJ's credibility finding was erroneous, remand was required when "the existing administrative record did not make the outcome of the disability determination process clear"). Accordingly, further proceedings are necessary.

**F.   REMAND FOR FURTHER PROCEEDINGS**

The decision whether to remand for further proceedings is within the discretion of the district court. Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Harman, 211 F.3d at 1179 (decision whether to remand for further proceedings turns upon their likely utility). However, where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. Id. Here, as set out above in Issue One, outstanding issues remain before a finding of disability can be made. Accordingly, remand is appropriate.

**VI. ORDERS**

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **REVERSED**.

2. This action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings as discussed above.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: February 5, 2007

```
            _____/s/_____
                  CARLA M. WOEHRLE
                  United States Magistrate Judge
```